IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROLAND STEWART ANDERSON  :

                     :

    v.                   :    Civil Action No. DKC 05-2234
                           Criminal Case No. DKC 01-0518

                     :

UNITED STATES OF AMERICA  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion by Petitioner Roland Stewart Anderson to vacate, set aside, or correct his sentence. (ECF No. 239). The issues are fully briefed and the court now rules. For the reasons that follow, the motion will be denied.[1]

**I. Background**

In 2001, Anderson, with the assistance of several others, coordinated the transportation of over 15 kilograms of cocaine and over 1000 kilograms of marijuana from Texas to Maryland. Anderson was charged on November 6, 2001, and a superseding indictment was returned against him and his co-conspirators on January 28, 2002. The indictment charged Anderson with (1) conspiracy to distribute and possess with intent to distribute

---

[1] Also pending are two additional motions: a motion to supplement filed by Anderson (ECF No. 254) and a motion for an extension of time to file a response (ECF No. 255) filed by Anderson. Both motions will be granted.

marijuana and cocaine; (2) possession of a firearm after having been convicted of a felony; (3) possession of a firearm with an obliterated serial number; and (4) use of a communication facility to facilitate a drug trafficking crime.

On August 27, 2002, Anderson entered a plea of guilty to count one before this court. At the rearraignment, the court reviewed the plea agreement with Anderson, confirmed that he understood and agreed with it, and verified that he had not been threatened into pleading guilty in any way. Anderson also expressed satisfaction with his trial counsel.

At sentencing on May 17, 2004, the court determined that the applicable sentencing range was between 97 to 121 months. Anderson was then sentenced to a 102-month term of imprisonment. On May 18, 2004, Anderson filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit; his appeal was subsequently dismissed.

In August 2005, Anderson filed a pro se Section 2255 motion to vacate his sentence. (ECF No. 239). After the government opposed (ECF No. 252), post-conviction counsel for Anderson filed a motion to supplement the motion, along with a memorandum in support of the initial memorandum. (ECF Nos. 253, 254). He then filed a reply on Anderson's behalf on April 20, 2006.

**II. Standard of Review**

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." A pro se movant is of course entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978). Here, Anderson, with counsel, also supplemented his arguments. But if the Section 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

**III. Analysis**

Anderson's motion presents two basic claims: (1) he received ineffective assistance of counsel during his plea negotiations, and (2) he was sentenced in violation of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Both claims ultimately fail.

    **A.   Ineffective Assistance of Counsel**

Anderson first contends that he received ineffective assistance of counsel. Such claims are governed by the well-settled standard adopted by the Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient. *See Strickland*, 466 U.S. at 697.

Anderson argues his trial counsel rendered ineffective assistance in two principal ways. First, he suggests that his counsel failed to investigate certain allegedly baseless "threats" made by the government and instead urged Anderson to

4

plead guilty pursuant to a plea agreement.[2] Second, he argues that counsel inappropriately stipulated to all the facts necessary to impose a two level upward adjustment under Guidelines § 2D1.1(b)(1), but nevertheless misled Anderson into believing that the adjustment could be challenged at sentencing.[3] The record does not support Anderson's assertions.

Anderson states that the government threatened to bring an additional charge under 18 U.S.C. § 924(c) if he chose not to go forward with a plea. Anderson maintains that his trial counsel erroneously advised him that the threat was valid, which led Anderson to plead guilty. Trial counsel was not ineffective because his counsel's advice on the Section 924(c) issue was correct.

Section 924(c) requires a mandatory minimum consecutive sentence of five years or more for those who use or carry a firearm "in relation to any crime of violence or drug

---

[2] On reply, however, Anderson apparently concedes that the government's "threats" were supported by the evidence. (ECF No. 256, at 2). His arguments based on those concessions are not considered herein, as they were raised for the first time on reply.

[3] Anderson also argued that his counsel was ineffective for stipulating to the two level increase for possession of a firearm. The plea agreement did not stipulate to that two level increase; to the contrary, it reserved the issue. Trial counsel then argued in motions papers that the two-level increase did not apply.

5

trafficking crime." 18 U.S.C. § 924(c)(1)(A)(i). Here, the stipulated facts included in the plea agreement suggest that the government had evidence in support of a Section 924(c) charge. In particular, police recovered a .40 caliber gun with an obliterated serial number in Anderson's coat pocket and in an apartment that also contained ammunition and drug proceeds. Such circumstances evidence that the government's threat, if one was made, was more than empty. *See, e.g., United States v. Dumas*, 216 F.App'x 298, 299 (4th Cir. 2007) (finding evidence sufficient to support Section 924(c) conviction where, among other things, illegally possessed gun was found in "close proximity" to large amounts of cocaine and cash); *United States v. Harris*, 183 F.3d 313, 318 (4th Cir. 1999) (affirming conviction where gun was found in defendant's hotel room where drug sales were made); *United States v. Peay*, 972 F.2d 71, 75 (4th Cir. 1992) (affirming conviction where agents "found a number of weapons while executing search warrants of [the defendant]'s house"); *see also United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (listing relevant factors in assessing nexus between gun and drug activities). In addition, Anderson stipulated that that government recorded conversations wherein Anderson and a co-defendant agreed to exchange guns. If those exchanges included drugs, they could be used to support a conviction under Section 924(c). *See United States v. Thomas*,

6

627 F.3d 534, 538-39 & n.2 (2010). Because there was real evidence supporting the potential charge, Anderson's trial counsel did not perform deficiently in advising Anderson to avoid an additional, consecutive sentence by pleading guilty pursuant to an agreement.

Anderson also says that the government threatened him with an increased mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A). That section provides for an increased mandatory minimum sentence of 20 years for any individual, such as Anderson, who commits a drug offense involving more than 5 kilograms of cocaine "after a prior conviction for a felony drug offense has become final." Anderson maintains that he could not have been subject to an increased mandatory minimum because he did not have any prior *final* felony drug conviction.

Anderson's trial attorney apparently concluded that a 1997 guilty plea in Virginia rendered Anderson eligible for the increased mandatory minimum. Although Anderson pled guilty in Virginia, he had not been sentenced because he fled prior to sentencing. The Fourth Circuit has sided with several other circuits in holding that "the final conviction language of section 841 applies to convictions that are no longer subject to examination on direct appeal." *United States v. Campbell*, 980 F.2d 245, 251 n.9 (4th Cir. 1992) (quotation marks omitted); *accord Adams v. United States*, 622 F.3d 608, 612 (6th Cir. 2010);

7

*United States v. Lovell*, 16 F.3d 494, 497 (2[d] Cir. 1994) (collecting cases). Because he had not been sentenced, Anderson's Virginia "conviction" had not become final. Consequently, counsel erred when he advised Anderson that the Virginia guilty plea rendered him eligible for an increased mandatory minimum.

Yet even if trial counsel's performance was deficient, there is no real indication that Anderson was ultimately prejudiced by that deficiency. Although he now insists that he would have gone to trial had he known that he was not eligible for the increased mandatory minimum, the record belies such a claim. In particular, Anderson filed two letters (construed as motions) on September 13, 2002 and September 26, 2002 that sought to withdraw the guilty plea he had entered a few weeks earlier. (ECF Nos. 176, 178). In both letters, Anderson explained that he understood that he was not subject to an increased mandatory minimum sentence. (*See* ECF No. 176 (stating that even though his attorney told him he was "subject to a 851[,] . . . after researching [he] found out that it wasn't possible"); 178 (referencing a "written statement to [him] by his attorney in open" court wherein his attorney stated he would be subject to a "Double Mandatory Minimum sentence" if he failed to plead, but further stating that he later "became aware that

the Double Mandatory Minimum would not apply to my case").[4] Despite his apparent understanding of the issue, Anderson nevertheless later chose to withdraw his motions to withdraw his plea and to move forward with sentencing on October 1, 2002. (ECF No. 179). Such facts vitiate any finding of prejudice. *Cf. United States v. Parker*, 38 F.App'x 138, 140 (4th Cir. 2002) (finding in context of ineffective assistance claim on direct appeal that defendant's decision to withdraw his motion to withdraw his plea, even after learning that counsel had rendered bad advice on sentence exposure, undermined a finding of prejudice). The strong evidence against Anderson also suggests that a defendant in his shoes would not have insisted on going to trial, where he would have faced potentially longer sentences on multiple counts. *See Meyer v. Branker*, 506 F.3d 358, 370 (4th Cir. 2007) (considering the strength of the prosecution's case in determining whether defendant could establish prejudice in the guilty plea context). Lacking prejudice, there is no ineffective assistance.

---

[4] Title 21 U.S.C. § 851 provides the procedures for filing a notice of the government's intent to rely on a prior conviction to enhance a sentence. Thus, Anderson's reference to 851 is likely to a reference that section. Moreover, the statement from trial counsel to which Anderson refers states that trial counsel advised Anderson that he had a risk of "increasing or doubling [his] mandatory minimum sentence on Count One based on [his] criminal history, including, the fact that [he] failed to appear for sentencing in a Virginia case."

9

Lastly, Anderson contends that his counsel was ineffective in telling Anderson that he could challenge the application of a two-level increase for possession of a firearm, even though the plea agreement stipulated to all the facts necessary to establish that the increase. In arguing that counsel "conceded the fundamental points of the argument," however, Anderson overstates the significance of the stipulated facts in the plea agreement. There were still reasonable, colorable challenges that could be made to the application of the two-level increase, and trial counsel made them. Therefore, trial counsel did not misrepresent anything when he reassured Anderson that he could challenge the enhancement at sentencing.

Guidelines § 2D1.1(b)(1) provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" during the relevant offense. For the enhancement to apply, the government must show that "the weapon was possessed during the relevant drug activity." *United States v. Slade*, 631 F.3d 185, 188 (4th Cir. 2011) (quotation marks omitted). Although the plea agreement stipulates that the defendant "possessed a firearm, during the relevant time period," it did not concede that the weapon was actually connected with the relevant offense. Trial counsel then argued that the gun was found unloaded in a house that did not contain any drug paraphernalia. He noted the absence of any facts showing the gun's actual use in the course

10

of the drug conduct. And he analogized the gun in Anderson's case to an "unloaded hunting rifle in the closet," an example specifically cited in the application notes of the Guidelines as an instance where the enhancement should not apply. U.S.S.G. § 2D1.1(b)(1), cmt. n.3. Although trial counsel's argument was not an easy one, and ultimately proved unpersuasive, it was not wholly unreasonable. Thus, counsel did not perform deficiently when he told Anderson that he could challenge the two-level enhancement at sentencing.[5]

### B. Application of *Booker*

Anderson also argues that he was wrongfully sentenced under a mandatory Guidelines scheme in violation of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Both parties assume that Anderson's conviction was final before the *Booker* decision was issued. Consequently, they focus their arguments on whether the *Booker* decision applies retroactively.

Although the Fourth Circuit has squarely held that *Booker* is not retroactive, *United States v. Morris*, 429 F.3d 65 (4th Cir. 2005), that decision is irrelevant here because Anderson's

---

[5] There is no indication that trial counsel guaranteed that he would win the argument. Anderson apparently recognized that counsel's argument might not succeed, as he asked the court during his rearraignment to clarify whether he could appeal an adverse decision on the Section 2D1.1 issue.

11

conviction was not final as of the date of the *Booker* decision. "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The Fourth Circuit dismissed Anderson's appeal on November 12, 2004; Anderson then had 90 days, until February 10, 2005, to file a petition for writ of certiorari. 28 U.S.C. § 2101(c). Thus, Anderson's conviction was not yet final because the time for filing a petition had not expired when the Supreme Court issued its *Booker* decision on January 12, 2005. *See United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009) ("'If [the Court of Appeals] dismiss[es] the appeal, the defendant is entitled to ask the Supreme Court to review [its] judgment by writ of certiorari, and *Clay* will determine the date on which the conviction becomes 'final.''") (quoting *Latham v. United States*, 527 F.3d 651, 653 (7th Cir. 2008)). *Booker* applied to Anderson's case.

Although *Booker* applied, it does not entitle Anderson to relief here. First, Anderson raised a claim on direct appeal under *Blakeley v. Washington*, 542 U.S. 296 (2004), the precursor to the later decision in *Booker*. The Fourth Circuit rejected the argument and granted the government's motion to dismiss on

the basis of the appeal waiver.[6]  That determination effectively forecloses relief here.  Where the Court of Appeals determines that a *Booker* challenge (in some ways the equivalent of a *Balkely* challenge) is encompassed within the scope of an appeal waiver, a defendant may not use Section 2255 to circumvent that ruling.  *Linder*, 552 F.3d at 396-97.  In such circumstances, "relief under *Booker* is unavailable . . . on collateral review."  *Id.* at 397.

In the alternative, even if a *Blakely* claim is distinguishable from a *Booker*-based argument for purposes of collateral review, Anderson's argument is still problematic because he did not raise the *Booker* argument in a petition for a writ of certiorari.  "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains."  *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quotation marks omitted).  There is no indication of either cause or prejudice.  Accordingly, Anderson's procedural default would bar his *Booker* claim.

---

[6]  In other cases, the Fourth Circuit has emphasized that a *Booker* claim will fall within the scope of appeal waiver like that signed by Anderson.  *United States v. Blick*, 408 F.3d 162, 170 (4th Cir. 2005); *United States v. Johnson*, 410 F.3d 137, 152 (4th Cir. 2005).

In summary, Anderson's claim premised on allegedly wrongful sentencing must be denied.

**IV. Conclusion**

For the foregoing reasons, Anderson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied. The motion to supplement and the motion for an extension will be granted.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted). Upon its review of the record, the court finds that Anderson does not satisfy the above standard.

A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
